PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHELLEY WESTFALL, | ) | |
| | ) | CASE NO. 4:16CV2921 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| LIBERTY LIFE ASSURANCE COMPANY OF BOSTON, | ) ) | |
| | ) | **MEMORANDUM OF OPINION &** |
| Defendant. | ) | **ORDER** [RESOLVING ECF NO. 17] |

Plaintiff Shelley Westfall commenced this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*., against Defendant Liberty Life Assurance Company of Boston. Plaintiff challenges the administrator's decision denying her long-term disability benefits. Pending before the Court are briefs as contemplated by *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 619 (6th Cir. 1998) (Gilman, J., concurring). Plaintiff has filed an opening brief. ECF No. 16. Defendant has filed a brief in response, which it styles as a motion for judgment on the merits. ECF No. 17. Defendant also filed proposed findings of fact and conclusions of law.[1] ECF No. 18. Plaintiff then filed a response in support of her position. ECF No. 19. For the reasons that follow, the Court denies Defendant's motion

---

[1] Under the Case Management Order, Plaintiff was also required to file proposed findings of fact and conclusions of law (ECF No. 11 at PageID #: 67), but she failed to do so.

(4:16CV2921)

and remands the case to the plan administrator to conduct a new review, taking into account Dr. Kissinger's identification of emotional lability as a symptom that Plaintiff suffered.

## I. Background

Plaintiff works in asset protection at a WalMart distribution center. ECF No. 13-1 at PageID #: 231. Plaintiff's son died while working at the same WalMart distribution center in April 2015. *Id.* at PageID #: 321. Plaintiff last worked on April 20, 2015. *Id.* at PageID #: 128. Plaintiff received long-term disability benefits from November 2, 2015 through January 14, 2016, but benefits beyond January 14, 2016 were denied. *Id.* at PageID #: 144. Plaintiff appealed Defendant's decision, but Defendant maintained its original decision. *Id.* at PageID #: 144-48.

Due to the denial of long-term disability benefits, Plaintiff filed this action. ECF No. 1.

### A. Initial Application for Benefits

After her son's death, Plaintiff went on short-term disability leave, which ended November 1, 2015. ECF No. 13-1 at PageID #: 317. In a letter dated September 4, 2015, Defendant informed Plaintiff that her short-term disability benefits were going to expire, and therefore, she would have to apply for long-term disability benefits to continue receiving benefits. *Id*. Plaintiff complied with this instruction and applied for long-term benefits.

On September 8, 2015, Defendant acknowledged that it had received Plaintiff's request for consideration of long-term disability benefits. *Id.* at PageID #: 316. In an activities questionnaire form Plaintiff completed in conjunction with the request, she wrote a note stating

2

(4:16CV2921)

she was not suffering from a physical disability, but rather, her heart was broken. *Id*. at PageID #: 319. The form included a list of tasks that individuals routinely complete, such as bathing, grocery shopping, and vacuuming, and the applicant had to indicate who in their life performs those tasks. *Id*. at PageID #: 320. For every task on the list, Plaintiff indicated that she performed the task on her own without any assistance. *Id*. The form also asked the applicant to describe their purported disability in their own words. *Id*. at PageID #: 321. Plaintiff wrote that her son died in her workplace, she could not bring herself to go back to that site, and she did not want to speak to people who asked her so many questions. *Id*.

### B. Office Visits & Defendant's Initial Review

Since her son's death, Plaintiff has paid office visits to two different doctors: Dr. Mark Kissinger, her primary care physician, and Dr. Prabnjot Deol, a psychiatrist. Plaintiff met with Dr. Kissinger on April 17, 2015, May 21, 2015, July 7, 2015, August 10, 2015, September 21, 2015, October 19, 2015, November 23, 2015, and March 2, 2016. She met with Dr. Deol on at least four occasions: October 23, 2015, November 30, 2015, January 6, 2016, and April 20, 2016. Dr. Kissinger reported that Plaintiff considered herself "down, but not depressed," at her April 17, 2015 appointment. *Id.* at PageID #: 276. At her six-week followup with Dr. Kissinger, Plaintiff indicated mild improvement, but that she was still "emotionally distraught" with "great sadness," although she had not yet started to take previously-prescribed medication. *Id.* at PageID #: 273. The notes from Plaintiff's July 7, 2015 visit with Dr. Kissinger stated that Plaintiff had attempted to go back to work, but was unable to do so, due to the emotional effects

3

(4:16CV2921)

of returning.  *Id.* at PageID #: 271.  During the August 10, 2015 visit, Dr. Kissinger's nurse practitioner recommended referring Plaintiff for a psychiatry evaluation, and Dr. Kissinger agreed with the recommendation.  *Id.* at PageID #: 267.  On September 21, 2015, Dr. Kissinger again referred Plaintiff to a psychiatrist   Plaintiff had previously scheduled an appointment with Dr. Deol for October 23, 2015, but she had to cancel due to the birth of her granddaughter.  *Id.* at PageID #: 264-65.  Dr. Kissinger's notes from the meeting indicate that Plaintiff had feelings of hopelessness and did not feel stable enough to return to work.  *Id.* at PageID #: 265.  Plaintiff also reported that marital discord had arisen since her last visit.  *Id.*

Defendant had Dr. Scott Lurie, a board-certified psychiatrist, review Plaintiff's medical records, and Dr. Lurie drafted a memorandum summarizing his findings.  *Id.* at PageID #: 256-58.  Dr. Lurie's assessment included notes from all meetings with Dr. Kissinger between Plaintiff's April 17, 2015 visit through her October 19, 2015 appointment.  *Id.*  Dr. Lurie concluded that the record before him demonstrated "limitations on [Plaintiff's] ability to perform tasks at the location of her employment (and the site of her son's death)."  *Id.* at PageID #: 256.  He found the record before him supported a six-week limitation from the original date of Plaintiff's initial appointment with Dr. Deol, October 23, 2015, with a possibility for a six-week extension.  *Id.*  Dr. Lurie also concluded that Plaintiff "might be able to function in a different area of the distribution center but that cannot be determined unless the claimant is given a transfer to another area."  *Id.* at PageID #: 257.  He further concluded that Plaintiff's symptoms supported a diagnosis of depression NOS.  *Id.*  Dr. Lurie also stated that "[t]he available record

4

(4:16CV2921)

does not document any psychiatric reason that the claimant could not be allowed to attempt to return to work in a different area of the distribution center or in a different location for her employer." *Id.*

After Dr. Lurie's memorandum, Plaintiff continued to see Dr. Kissinger and began to see Dr. Deol. Plaintiff had her first appointment with Dr. Deol on October 23, 2015. *Id.* at PageID #: 183. Dr. Deol's notes indicated that he viewed Plaintiff as suffering from major depression, single episode. *Id.* After this initial appointment with Dr. Deol, Plaintiff had a November 23, 2015 appointment with Dr. Kissinger, and the notes for that appointment reveal that Plaintiff had separated from her husband. *Id.* at PageID #: 192. Dr. Kissinger also noted that Plaintiff suffered days when her sadness rendered her unable to get out of bed, but such events occurred less often then they had previously. *Id.* Plaintiff had a follow-up appointment with Dr. Deol on November 30, 2015, and at this meeting, she reported weight gain, suffering from panic almost daily, and being angry with WalMart. *Id.* at PageID #: 182.

Dr. Lurie drafted an addendum to his memorandum, and he issued the addendum on December 29, 2015. In his addendum, he concluded that Plaintiff suffered from major depression and complicated grief. *Id.* at PageID #: 211-12. That said, however, Dr. Lurie concluded that the record before him did not document sufficiently frequent and severe symptoms or corroborating mental status findings to support a finding of ongoing impairment. *Id.* at PageID #: 211.

(4:16CV2921)

Following Dr. Lurie's addendum, Defendant sent a letter to Plaintiff, dated January 15, 2016, informing Plaintiff that she did not qualify for long-term disability benefits. *Id.* at PageID #: 207. Defendant claimed that, based on Dr. Lurie's review, Plaintiff's condition no longer met the definition of "disability." *Id.* at PageID #: 208.

After Defendant denied Plaintiff long-term disability benefits, Plaintiff retained counsel and filed an appeal. *Id.* at PageID #: 204.

On March 2, 2016, Plaintiff had a three-month follow-up with Dr. Kissinger. *Id.* at PageID #: 194. During this meeting, Plaintiff reported feeling anxiety. *Id.* Additionally, even though her long-term disability benefits had been denied, she still felt unable to return to work due to grief. *Id.*

### C. Mental Residual Functional Capacity Questionnaires

Both Dr. Kissinger and Dr. Deol completed mental residual functional capacity questionnaires. The form contained questions related to the patient's impairment and ability to function in the workplace. It included both open-ended questions, such as the treatment the patient had received, and questions that asked the treating physician to choose from a range of options, such as by identifying the patient's signs and symptoms.

Dr. Kissinger completed the mental residual functional capacity questionnaire on March 17, 2016. *Id.* at PageID #: 197-202. On the form, Dr. Kissinger indicated that he deferred to Dr. Deol regarding DSM-IV data and that he received information regarding treatment and response from Dr. Deol. *Id.* at PageID #: 197. The form contained a section that listed various work-

6

(4:16CV2921)

related activities and tasked the individual completing the form to rate the subject on a five-slot range as to the patient's ability to complete the activities. The range consisted of the following ratings: (1) "unlimited or very good"; (2) "limited but satisfactory"; (3) "seriously limited, but not precluded"; (4) "unable to meet competitive standards"; and (5) "no useful ability to function." Dr. Kissinger rated Plaintiff "unable to meet competitive standards" or "no useful ability to function" in five categories: (1) "maintain attention for two hour segment"; (2) "maintain regular attendance and be punctual within customary, usually strict tolerances"; (3) "work in coordination with or proximity to others without being unduly distracted"; (4) "complete a normal workday and workweek without interruptions from psychologically based symptoms"; and (5) "deal with normal work stress." *Id.* at PageID #: 199. Additionally, Dr. Kissinger indicated that, on average, he anticipated that Plaintiff's impairments or treatments would cause her to miss more than four days of work per month. *Id.* at PageID #: 201.

Dr. Deol completed the form on April 20, 2016. *Id.* at PageID #: 185-90. On the DSM-IV portion of the form, Dr. Deol described Plaintiff as suffering from major depression. *Id.* at PageID #: 185. As to the work-activities section of the form, Dr. Deol did not mark Plaintiff as "Unable to meet competitive standards" or "No useful ability to function" in any category. *Id.* at PageID #: 187-88. He did, however, mark Plaintiff as "Seriously limited, but not precluded" in the five areas that Dr. Kissinger marked Plaintiff either "Unable to Meet Competitive Standards" or "No useful ability to function." *Id.* Like Dr. Kissinger, Dr. Deol marked that Plaintiff's

7

(4:16CV2921)

impairments or treatment would cause her to be absent from work for four or more days per month, on average. *Id.* at PageID #: 189.

On the section of the form tasking the physician to identify the patient's signs and symptoms, Dr. Kissinger selected "Emotional lability," but Dr. Deol did not. *Compare id.* at PageID #: 198 *with id.* at PageID #: 186.

**D. Dr. Sugerman Memorandum and Denial of Benefits**

Defendant had Dr. Peter Sugerman, a board-certified psychiatrist, review Plaintiff's case, and he wrote a letter expressing his findings on August 8, 2016. *Id.* at PageID #: 149-53. Dr. Sugerman took issue with Dr. Deol's diagnosis of major depression, and instead, contended that a diagnosis of adjustment disorder with depression and bereavement was proper, because the record he evaluated did not document at least two weeks of constant depression, thereby precluding a diagnosis of major depression. *Id.* at PageID #: 152. He asserted that the mixture of good and bad days that Plaintiff suffered was more suggestive of grief than depression. *Id.* at PageID #: 151. Dr. Sugerman explained that the absence of symptoms "more reliably associated with impairment," such as suicidal ideation, severe psychomotor changes, emotional lability, or significant cognitive changes, precluded a finding of impairment. *Id.*

Following Dr. Sugerman's memorandum, Defendant denied Plaintiff's appeal. *Id.* at PageID #: 144-48.

8

## II. Standard of Review

When an ERISA plan gives the plan administrator discretion in interpreting its terms or making benefits determinations, a court reviews the administrator's decision under the deferential arbitrary and capricious standard of review. *Farhner v. United Transp. Union Discipline Income Prot. Program*, 645 F.3d 338, 342 (6th Cir. 2011); *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 613 (6th Cir. 1998). Under the arbitrary and capricious standard of review, the court must uphold the administrator's decision if the administrator's interpretation of the plan's provisions is "reasonable" or "rational." *Price v. Bd. of Tr. of Ind. Laborer's Pension Fund*, 632 F.3d 288, 295 (6th Cir. 2011) (quoting *Kovach v. Zurich Am. Ins. Co.*, 587 F.3d 323, 328 (6th Cir. 2009)); *Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 308 (6th Cir. 2010). The court "review[s] not only the insurer's conclusion, but also its reasoning." *Metro. Life Ins. Co. v. Conger*, 474 F.3d 258, 265 (6th Cir. 2007).

In reviewing the decision of the plan administrator, the Court may only consider the evidence in the administrative record, as that is the evidence that the plan administrator considered. *Wilkins*, 150 F.3d at 615. This standard of review does not require courts to "rubber stamp[]" a plan administrator's decision, however. *Schwalm*, 626 F.3d at 308. "A court must review the quantity and quality of the medical evidence on each side." *Id.* (quoting *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006)). The decision must be upheld if it results from "a deliberate principled reasoning process" and is supported by "substantial evidence." *Id.* (quoting *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d

(4:16CV2921)

1140, 1144 (6th Cir. 1991)). Plaintiff bears the burden of proving the plan administrator's decision was arbitrary and capricious. *Farhner*, 645 F.3d at 343.

**III. Discussion**

    **A. Disability Definition**

Defendant argues that its decision to deny long-term disability benefits complies with the disability policy, because Plaintiff is ineligible for disability benefits under her policy. ECF No. 17 at PageID #: 371-74. Specifically, Plaintiff's condition does not meet the policy's definition of "disability." Defendant contends that, to qualify for long-term disability benefits, Plaintiff would have to show that she could not perform her job "without regard for her work location." *Id.* at PageID #: 373.

In response, Plaintiff contends that she suffers from major depression that prevents her from performing the actual demands of her job. ECF No. 19 at PageID #: 413.

The policy defines "disability" as follows:

> i. that during the Elimination Period and the next 12 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and
> ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

ECF No. 13-1 at PageID #: 92. Additionally, when making determinations for long-term disability benefits, "Liberty will not consider employment factors including, but not limited to, interpersonal conflict in the workplace, recession, job obsolescence, paycuts, job sharing and loss of a professional or occupational license or certification." *Id.* at PageID #: 105. Therefore, based

(4:16CV2921)

on the employment factors language of the policy, Defendant is correct that Plaintiff must show she cannot perform her job duties regardless of location.

### B. Defendant's Decision-Making Process

Having determined job location is not a factor upon which to make a disability determination, the Court will now analyze whether Defendant's decision to deny long-term disability benefits was arbitrary and capricious. This analysis includes not only the decision itself, but also the decision-making process.

Plaintiff is correct that the arbitrary and capricious standard of review is not without teeth (ECF No. 16 at PageID #: 362); however, the Court may not overturn a plan administrator's decision "[i]f there is a reasonable explanation for the administrator's decision denying benefits." *Schwalm*, 626 F.3d at 308.

This principal applies even in instances when a defendant relies on a file review to justify its decision to deny benefits. *Kalish v. Liberty Mutual/Liberty Life Assur. Co.*, 419 F.3d 501, 508 (6th Cir. 2005) (finding that whether a doctor was a treating physician is a factor under the arbitrary and capricious analysis, but reliance on file review alone is not sufficient to find that a plan administrator acted improperly). When a conflict arises between the opinion of a treating physician and the opinion of a file review, the defendant may rely on a file review only if the plan administrator "provides reasons  including a lack of objective evidence from the treating physician  for adopting alternative opinions [from a file review] that are consistent with its responsibility to provide a full and fair review of the claim." *Gilewski v. Provident Life and*

11

*Accident Insurance Company*, 683 F.App'x. 399, 406 (6th Cir. 2017) (citation omitted); *see also Balmer v. Reliance Standard Life Ins. Co.*, 601 F.3d 497, 504 (6th Cir. 2010) ("Reliance on other physicians is reasonable so long as the administrator does not totally ignore the treating physician's opinions) (citation omitted)). Because Defendant's denial letter relies on analysis Dr. Sugerman provided as to why his opinions controlled over the opinions of Drs. Kissinger and Deol (*See* ECF No. 13-1 at PageID #: 144-48), the Court will treat Dr. Sugerman's analysis as Defendant's purported reasons for relying on his review, rather than the opinions of Plaintiff's treating physicians.

Dr. Sugerman's letter does not provide sufficient reasons to show that Defendant's analysis should have been preferred over the analyses of Drs. Kissinger and Deol. Dr. Sugerman concluded that Plaintiff did not suffer from major depression, because she lacked symptoms that demonstrated "the presence of severe psychiatric symptoms, consistent with observed abnormalities an associated with global functional difficulties." ECF No. 13-1 at PageID #: 151. He further concluded that "[s]ymptoms more reliably associated with impairment are not present, such as suicidal ideation that requires risk management, severe psychomotor changes, *emotional lability*, or significant cognitive changes." *Id.* (emphasis added). In a section of Dr. Sugerman's letter headed "Questions," Dr. Sugerman answers in the negative to the question "Do the medical records provide evidence of impairment attributable to mental illness from January 15, 2016 to the present?". *Id.* at PageID #: 152. The answer makes no mention of emotional lability.

(4:16CV2921)

Dr. Sugerman's claim that emotional lability was not present ignores Dr. Kissinger's mark on the residual mental functional capacity questionnaire that Plaintiff suffered from emotional lability. *See id.* at PageID #: 198. Even if Dr. Sugerman concluded that Plaintiff did not suffer from emotional lability, he failed to provide reasons justifying his alternative conclusion. Dr. Sugerman offered support for his overall conclusion, but he has overlooked the emotional lability symptom, and, in fact, used the purported absence of emotional lability as a reason for his conclusion that Plaintiff did not suffer from an impairment disabling her from work. As the Sixth Circuit has held "cherry-picking symptoms ... and then reverse engineering a diagnosis ... is not the hallmark of a reasoned explanation." *Conger*, 474 F.3d at 266 (citation and emphasis omitted).

Moreover, the fact that Defendant both determines whether an employee is eligible for benefits and pays those benefits creates a conflict of interest, and that conflict militates against Defendant's decision to deny benefits. Although not dispositive, courts must consider the presence of a conflict of interest in determining whether a denial of benefits was arbitrary and capricious. *Gismondi v. United Technologies Corp.*, 408 F.3d 295, 298 (6th Cir. 2005). In this case, Defendant's conflict supports the inference that ignoring Dr. Kissinger's finding of emotional lability was not an accidental omission on Defendant's part, but instead, a case of cherry-picking favorable facts. Indeed, the Court has held that the combination of cherry-picking and a potential conflict creates the impression that an administrator is "reaching for a desired

13

(4:16CV2921)

outcome, rather than granting a full and fair review." *Myers v. Mutual of Omaha Life Insurance Company*, 175 F.Supp.3d 820, 829 (N.D.Ohio 2016) (Pearson, J.).

Even if Defendant argued that its omission of the emotional lability finding does not upset its conclusion, that does not mean that it did not act arbitrarily and capriciously. When reviewing an administrator's decision courts "review not only the insurer's conclusion, but also its reasoning." *Conger*, 474 F.3d at 265. Although evidence exists to support the conclusion that employment factors (i.e. working in the same place her son died) are central to Plaintiff's impairment, the reasoning process Defendant used to deny Plaintiff benefits was flawed, as it ignored the emotional lability finding.

Because Defendant's reasoning process was arbitrary and capricious, it cannot stand and the Court must determine the proper remedy.

**C. Remedy**

District courts "have considerable discretion to craft a remedy after finding a mistake in the denial of benefits." *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 621 (6th Cir. 2006). A district court may either remand to the plan administrator for a full and fair inquiry, or award benefits retroactively. *Id.* Typically, a court will retroactively award benefits only when a plaintiff has clearly established disability under the plan. *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 171 (6th Cir. 2007); *Kalish v. Liberty Mut./Liberty Life Assur. Co. of Boston*, 419 F.3d 501, 513 (6th Cir. 2005). In contrast, "whe[n] the problem is with the integrity of the plan's decision-making process, rather than that a claimant was denied benefits to which he was clearly

14

(4:16CV2921)

entitled," remand is the appropriate remedy. *Elliott*, 473 F.3d at 622 (brackets and quotation marks omitted). Remand is also preferred "where the adequacy of claimant's proof is reasonably debatable." *Cooper*, 486 F.3d at 172.

In this case, Plaintiff has not proven that she, in fact, suffered from a disability, but rather that Defendant's process was arbitrary and capricious. Because of that, remand, rather than a retroactive award of benefits, proves the proper remedy. *E.g.*, *Myers*, 175 F.Supp.3d at 829-30 (remanding case back to plan administrator after finding flaws in administrator's reasoning process due to cherry-picking of favorable evidence).

On remand, Defendant is to provide a full and fair inquiry to cure the defect in its decision-making process. Accordingly, Defendant shall include in its reasoning the fact that Dr. Kissinger identified emotional lability as a symptom from which Plaintiff suffered.

### IV. Conclusion

For the foregoing reasons, the Court remands this case to the plan administrator for a full and fair review.

IT IS SO ORDERED.

| | |
|---|---|
| February 28, 2018 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |